1  Mark S. Horoupian (CA Bar No. 175373)
   **Sulmeyer**Kupetz
2  A Professional Corporation
   333 South Hope Street, Thirty-Fifth Floor
3  Los Angeles, California 90071-1406
   Telephone: 213.626.2311
4  Facsimile: 213.629.4520

5  Bankruptcy Counsel for Russell Lynn Armstrong,
   Debtor and Debtor in Possession

6

7               **UNITED STATES BANKRUPTCY COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

9

In re                                    Case No.  05-48109-ER

10

Russell Lynn Armstrong                   Chapter 11

11

                   Debtor.               **DISCLOSURE STATEMENT FOR DEBTOR'S**
12                                        **PLAN OF REORGANIZATION**

13

                                         **Disclosure Statement Hearing**
14

                                         Date:      May 30, 2007]
15                                       Time:      11:00 a.m.
                                         Place:     Courtroom 1568
16

                                         **Plan Confirmation Hearing**
17                                       Complete This Section When
                                         Applicable
18

                                         Date:
19                                       Time:
                                         Place:
20

Tax ID #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
21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

    A.   Overview Of Plan of Reorganization .........................................1

    B.   Overview Of Disclosure Statement.............................................2

    C.   Voting and Classes Under the Plan...........................................3

    D.   Additional Information - Exhibits ................................................3

    E.   Disclaimer.................................................................................4

    F.   Balloting....................................................................................5

    G.   Purpose of This Document........................................................6

    H.   Deadlines for Voting and Objecting; Date of Plan
         Confirmation Hearing ...............................................................7

        1.   Time and Place of the Confirmation Hearing: ..................7

        2.   Deadline For Voting For or Against the Plan: ...................7

        3.   Deadline For Objecting to the Confirmation of the
            Plan: ..............................................................................8

        4.   Identity of Person to Contact for More Information
            Regarding the Plan:.......................................................8

II. THE DEBTOR................................................................................................9

III. THE DEBTOR'S RECENT FINANCIAL RESULTS.........................................10

IV. FACTORS PRECIPITATING CHAPTER 11 FILING ......................................10

V. CHAPTER 11 CASE.....................................................................................11

    A.   Commencement Of Case.........................................................11

    B.   Motion to Set Bar Date for Filing Claims .................................12

    C.   Employment Of Professionals ..................................................12

        1.   General Bankruptcy Counsel:..........................................12

LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

D.    Non-Dischargeability Litigation ...........................................................12

E.    Preferential or Fraudulent Transfers....................................................12

VI. SUMMARY OF BUSINESS PLAN.................................................................13

A.    Operating Projections.........................................................................14

B.    Funds for Effective Date Distributions ................................................14

1.    Administrative Claims:        $ 31,356.41 ...........................................14

2.    10% Payment to General Unsecured Creditors:
$162,000.00 ......................................................................................14

VII. SUMMARY OF THE PLAN OF REORGANIZATION.......................................15

A.    What Creditors and Equity Interest Holders Will Receive
Under The Proposed Plan.....................................................................15

B.    Unclassified Claims ...........................................................................15

1.    Administrative Claims in General:......................................................15

2.    Court Approval of Fees Not Required:................................................16

3.    Priority Tax Claims:..........................................................................16

C.    Classified Claims and Interests ..........................................................20

1.    Class of General Unsecured Claims (Class 1): ...................................20

2.    Amex (Class 2):................................................................................20

3.    Corino (Class 3):..............................................................................21

D.    Means of Effectuating the Plan...........................................................21

1.    Funding the Plan:.............................................................................21

2.    Disbursements:................................................................................21

3.    Revesting of Property Estate: ...........................................................22

4.    Post-Confirmation Operations: .........................................................22

5.    Execution and Delivery of Documents:...............................................22

6.    Objections to Claims:.......................................................................22

LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

7.    Deadline for Filing Claims: ...............................................22

8.    Deadline for Filing Certain Administrative Claims: ...........22

9.    Retention and Enforcement of Claims: .............................23

10.    1146(c) Exemption: .........................................................23

11.    Court and United States Trustee Fees: .............................23

12.    Withholding and Reporting Requirements: .......................23

13.    Executory Contracts and Unexpired Leases: ....................23

E.    Changes in Rates Subject to Regulatory Commission
      Approval ...................................................................................24

F.    Retention of Jurisdiction ...........................................................24

VIII. TAX CONSEQUENCES OF PLAN ..........................................................24

A.    Introduction ...............................................................................24

B.    Federal Income Tax Consequences to Debtor ...........................25

1.    Reduction of Debtor's Indebtedness: ...............................25

C.    Tax Consequences to Creditors .................................................27

1.    Claims Satisfied With Payments: .....................................27

a.    Gain/Loss on Exchange: .........................................27

b.    Tax Basis and Holding Period of Items
      Received: .................................................................28

c.    Determination of Character of Gain: .......................28

2.    Receipt of Interest: ..........................................................28

3.    Other Tax Considerations: ...............................................29

a.    Market Discount: .....................................................29

b.    Withholding: ............................................................29

c.    Taxation of Certain Reserves: .................................30

IX. ALTERNATIVES TO CONFIRMATION OF THE PLAN ............................31

LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# I.

## INTRODUCTION

### A. Overview Of Plan of Reorganization

Russell Lynn Armstrong ("Armstrong" or the "Debtor"), an individual, filed a voluntary bankruptcy petition (the "Petition") on October 15, 2005 (the "Petition Date") under chapter 7 of the United States Bankruptcy Code (the "Code"). The case (the "Case") was later converted by stipulation and order of the Court dated March 22, 2006 to one under Chapter 11 of the Code. Under chapter 11, a debtor in possession and, under some circumstances, creditors and other parties in interest, may propose a plan providing for the disposition of the debtor's assets and the treatment of claims of creditors and interests of equity holders of the debtor. A chapter 11 plan may provide for a debtor to reorganize its affairs, by continuing to operate its business, or for liquidation of the debtor by selling assets of its bankruptcy estate, or for a combination of reorganization and liquidation. In this case, the Debtor, who is an individual and is self-employed as a consultant, is proposing to repay his pre-petition claims, in accordance with this Plan, from post-petition earnings, which are not property of the bankruptcy estate, and from other sources. The Debtor is the party proposing the Plan of Reorganization (the "Plan") provided to you with this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN. UNLESS OTHERWISE DEFINED HEREIN, ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING ASCRIBED TO THEM IN THE PLAN. THE PLAN IS BEING PROVIDED TO YOU ALONG WITH THIS DISCLOSURE STATEMENT.

The Plan provides for the reorganization of the Debtor. In summary, among other things, the Plan provides for the following:

-**Payment in full of chapter 11 and chapter 7 administrative priority claims;**

-**Payment in full of all priority taxes; and**

-**Payment of 10% of all allowed general unsecured claims.**

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1     -**Payment, as stipulated, of certain alleged non-dischargeable claims.**

2     The liquidation analysis included in this Disclosure Statement (see Section X(B)

3   below) show that Unsecured Creditors of the Debtor holding Allowed Claims will receive

4   substantially more under the Plan than they would in a liquidation of the Debtor's assets

5   under chapter 7 of the Bankruptcy Code.  In a liquidation, it is estimated that unsecured

6   creditors would receive nothing, because the Debtor's estate, which does not include

7   post-petition earnings, has little or no value.  In contrast, under the Plan, administrative

8   and other priority claims will be paid in full, and unsecured creditors will receive 10% of

9   their claims, and certain alleged non-dischargeable claims will be paid between 60-70%

10   per agreements with the Debtor.

11     The Debtor believes that the Plan is feasible and that it has the ability to perform

12   all of his obligations under the Plan.  Through accumulated post-petition earnings, the

13   Debtor will have cash sufficient to pay all amounts due on the Effective Date.  The only

14   claims that will be paid over time under this Plan are the priority tax claims, and the

15   stipulated claims of American Express, and Christy Corino.  The Debtor believes that his

16   continued employment as an independent consultant to various companies will provide

17   him with sufficient income to fund such payments.

18     The Debtor submits that Confirmation of the Plan is in the best interests of

19   Creditors and the Debtor.  Under the Plan, the value of the Debtor's assets and the

20   recovery for Unsecured Creditors of the Debtor are maximized

21     **B.  Overview Of Disclosure Statement**

22     The Debtor submits this Disclosure Statement in accordance with Section 1125 of

23   the Bankruptcy Code to holders of impaired claims in connection with proceedings for

24   confirmation of the Plan.  The Plan has been proposed by the Debtor and filed with the

25   Bankruptcy Court (the "Court").

26     This Disclosure Statement provides information regarding the history of the

27   Debtor, his assets, and the events precipitating the commencement of the Debtor's

28   chapter 11 case.  This Disclosure Statement also describes the Plan and the Plan's

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  treatment of Claims against the Debtor.  The Disclosure Statement's purpose is to

2  provide the holders of Impaired Claims with adequate information to assist them in

3  making an informed decision regarding acceptance or rejection of the Plan.  Each holder

4  of an Impaired Claim should read this Disclosure Statement (including its Exhibits) and

5  the Plan in their entirety and consider them in connection with the proceedings regarding

6  Confirmation of the Plan.  The Debtor has not authorized any person to utilize, for

7  purposes of solicitation, any information concerning the Debtor other than the information

8  contained or referred to in this Disclosure Statement.

9      C. **Voting and Classes Under the Plan**

10      The Plan divides the Claims of Creditors into 3 classes.  Only classes of creditors

11  and interest holders with claims or interests impaired under a chapter 11 plan are entitled

12  to vote on a plan.  Generally, and subject to the specific provisions of the Bankruptcy

13  Code, this includes creditors and interest holders whose claims or interests, under a plan,

14  will be modified in terms of principal, interest, length of time for payment, or a

15  combination of the above.  Each holder of a Claim in a Class that is not impaired under

16  the Plan is conclusively presumed to have accepted the Plan, and solicitation of

17  acceptances from the holders of such Claims is not required and will not be undertaken.

18  Claims based on post-petition agreements with the Debtor approved by the Court are

19  Administrative Claims which are not classified under the Plan.  The holders of

20  unclassified Claims are not entitled to vote on the Plan.

21      Class 1 (general unsecured claims), Class 2 (American Express), and Class 3

22  (Christy Corino) are impaired, and are entitled to vote on the Plan.

23      D. **Additional Information - Exhibits**

24      The following documents are attached as Exhibits (the "Exhibits") to this

25  Disclosure Statement in the following order:

26          1.      The Plan;

27          2.      The Debtor's Financial Projections;

28          3.      A schedule of General Unsecured Creditors

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

2    **E. Disclaimer**

3    The Court has approved this Disclosure Statement as containing information of a

4    kind and in sufficient detail, as far as is reasonably practicable in light of the nature and

5    history of the Debtor and the condition of the Debtor's books and records, adequate to

6    enable hypothetical, reasonable investors typical of the holders of Impaired Claims to

7    make an informed judgment as to whether to accept or reject the Plan. **APPROVAL OF**

8    **THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A**

9    **DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR THE**

10   **MERITS OF THE PLAN.**

11   **THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE**

12   **DEBTOR FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE**

13   **BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.**

14   **EXCEPT AS OTHERWISE EXPRESSLY STATED HEREIN, NOTHING**

15   **CONTAINED HEREIN SHALL BE ATTRIBUTABLE TO OR IS DERIVED FROM OR**

16   **REPRESENTED TO BE ACCURATE BY THE OFFICE OF THE UNITED STATES**

17   **TRUSTEE, BY ANY HOLDER OF A CLAIM OR INTEREST, OR BY ANY OF THEIR**

18   **RESPECTIVE ADVISORS, NOR HAVE ANY SUCH PARTIES INDEPENDENTLY**

19   **VERIFIED THE INFORMATION SET FORTH HEREIN AND EACH MAKES NO**

20   **REPRESENTATION AS TO THE ACCURACY THEREOF.**

21   **ALTHOUGH THE DEBTOR'S PROFESSIONAL ADVISORS HAVE ASSISTED**

22   **IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON**

23   **FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING FINANCIAL,**

24   **BUSINESS, AND ACCOUNTING DATA PROVIDED BY THE DEBTORS, THEY HAVE**

25   **NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH HEREIN AND**

26   **MAKE NO REPRESENTATION AS TO THE ACCURACY THEREOF.**

27   **SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS:** The

28   information contained in this Disclosure Statement and certain other statements

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    contained or incorporated by reference herein, including, without limitation, statements

2    containing the words "may," "will," "believe," "anticipate," "expect," "intend," "can," "could,"

3    "estimate," "should," and words of similar import constitute "forward-looking statements"

4    within the meaning of the Private Securities Litigation Reform Act of 1995.  Such forward-

5    looking statements involve known and unknown risks, uncertainties, and other factors

6    that may cause the actual results, performance, or achievements of the Debtor, or

7    industry results, to be materially different from any future results, performance, or

8    achievements expressed or implied by such forward-looking statements.  Such factors

9    include, among others, the following:  national and local general economic and market

10   conditions; demographic changes; liability of and claims asserted against the Debtor; and

11   changes in business strategy or development plans.  Certain of these factors are

12   discussed in more detail elsewhere herein.  **Given these uncertainties, readers of this**

13   **Disclosure Statement are cautioned to consider these risks and to not place undue**

14   **reliance on such forward-looking statements**.  The Debtor disclaims any obligation to

15   update any such factors or to publicly announce the result of any revisions to any of the

16   forward-looking statements contained or incorporated by reference herein to reflect

17   subsequent events or developments.

18         After carefully reviewing this Disclosure Statement, including the Exhibits, and the

19   Plan, each holder of an Impaired Claim in Classes 1 through 3 should decide whether to

20   accept or reject the Plan and should indicate its vote on the enclosed Ballot and return it

21   in the envelope provided.

22         **F.  Balloting**

23         **TO BE COUNTED, YOUR BALLOT MUST BE COMPLETELY FILLED IN,**

24   **SIGNED, AND TRANSMITTED IN THE MANNER SPECIFIED IN THE BALLOT SO**

25   **THAT IT IS RECEIVED BY THE VOTING DEADLINE SPECIFIED IN THE BALLOT**

26   **AND HEREIN.  PLEASE CAREFULLY FOLLOW ALL INSTRUCTIONS CONTAINED IN**

27   **THE BALLOT AND IN THIS DISCLOSURE STATEMENT.  ANY BALLOTS RECEIVED**

28   **WHICH DO NOT INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE**

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 | PLAN, WHICH ARE NOT SIGNED, WHICH INDICATE BOTH AN ACCEPTANCE AND

2 | A REJECTION OF THE PLAN, OR WHICH OTHERWISE DO NOT FULLY COMPLY

3 | WITH THE BALLOT INSTRUCTIONS, WILL NOT BE COUNTED.

4 |     If you have any question about the procedure for voting, or if you did not receive a

5 | Ballot, received a damaged Ballot, have lost your Ballot, or if you would like any

6 | additional copies of this Disclosure Statement and/or related documents, please contact

7 | Mark S. Horoupian, SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los Angeles,

8 | CA  90071, (telephone) (213) 626-2311, (fax) (213) 629-4520, email:

9 | mhoroupian@sulmeyerlaw.com.

10 | **G.  Purpose of This Document**

11 |     This Disclosure Statement summarizes what is in the Plan, and provides you with

12 | certain information relating to the Plan and the process the Court follows in determining

13 | whether or not to confirm the Plan.

14 |     **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

15 | **KNOW ABOUT:**

16 |     (1)    **WHO CAN <u>VOTE</u> TO ACCEPT OR REJECT THE PLAN, OR OBJECT TO**

17 |         **CONFIRMATION OF THE PLAN,**

18 |     (2)    **WHAT THE TREATMENT OF ALLOWED CLAIMS AND EQUITY**

19 |         **INTERESTS WILL BE UNDER THE PLAN (i.e., what the holder of an**

20 |         **Allowed Claim or Equity Interest will receive if the Plan is confirmed),**

21 |     (3)    **HOW THE TREATMENT OF ALLOWED CLAIMS AND EQUITY**

22 |         **INTERESTS UNDER THE PLAN COMPARES TO THE TREATMENT OF**

23 |         **ALLOWED CLAIMS AND EQUITY INTERESTS IN LIQUIDATION UNDER**

24 |         **CHAPTER 7 OF THE BANKRUPTCY CODE,**

25 |     (4)    **THE HISTORY OF THE DEBTOR,**

26 |     (5)    **WHAT THE COURT WILL CONSIDER IN DETERMINING WHETHER OR**

27 |         **NOT TO CONFIRM THE PLAN,**

28 |     (6)    **THE DEBTOR'S PLAN,**

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    **(7)     WHAT IS THE EFFECT OF CONFIRMATION OF THE PLAN, AND**

2    **(8)     WHETHER THE PLAN IS FEASIBLE.**

3    This Disclosure Statement cannot tell you everything about your rights. You

4    should consider consulting your own lawyer to obtain more specific advice on how the

5    Plan will affect you and what is your best course of action. Be sure to read the Plan as

6    well as the Disclosure Statement. If there are any inconsistencies between the Plan and

7    the Disclosure Statement, the Plan provisions will govern. The Code requires a

8    Disclosure Statement to contain "adequate information" concerning the Plan. The Court

9    has approved this document as an adequate Disclosure Statement, containing enough

10   information to enable parties affected by the Plan to make an informed judgment about

11   the Plan.

12   **H.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

13   THE COURT HAS NOT YET CONFIRMED (APPROVED) THE PLAN

14   DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS

15   OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT

16   LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE

17   DEBTOR, ANY ENTITY ACQUIRING PROPERTY UNDER THE PLAN, AND ON ALL

18   CREDITORS AND EQUITY INTEREST HOLDERS IN THIS CASE.

19       1.  Time and Place of the Confirmation Hearing:

20       The hearing (the "Confirmation Hearing") where the Court will determine whether

21   or not to confirm the Plan will take place on _____, 2007, at ____, in

22   Courtroom _____

23   _____

24       2.  Deadline For Voting For or Against the Plan:

25       If you are entitled to vote, it is in your best interest to timely vote on the enclosed

26   Ballot and return the Ballot in the enclosed envelope to the attention of the Debtor's

27   bankruptcy counsel, SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los Angeles,

28   CA 90071, attention:  Mark S. Horoupian.  Your ballot must be completely and accurately

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   filled-out in accordance with the ballot instructions and received by 5:00 p.m., Pacific

2   Time, on _____, 2007, or it will not be counted.

3        3.   Deadline For Objecting to the Confirmation of the Plan:

4   Objections to the confirmation of the Plan must be filed with the Court and served

5   by _____, 2007, upon counsel to the Debtor, to the attention of Mark

6   S. Horoupian, SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los Angeles, CA

7   90071, email: mhoroupian@sulmeyerlaw.com.

8        4.   Identity of Person to Contact for More Information Regarding the Plan:

9   Any interested party desiring further information about the Plan should contact

10  counsel for the Debtor, in writing, to the attention of Mark S. Horoupian at

11  SulmeyerKupetz, 333 South Hope Street, 35th Floor, Los Angeles, CA 90071, e-mail:

12  mhoroupian@sulmeyerlaw.com, or by calling (213) 626-2311.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[MSH\BANKR\514019.1 4/16/2007]

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## II.

## THE DEBTOR

The Debtor is an individual, who earns income as an independent financial consultant for early stage and start-up ventures, and other companies in need of financial consulting services.  The Debtor has been engaged in this line of business for approximately 20 years.  The Debtor enjoyed particularly notable levels of success during the "dot.com" boom of the late 1990's to early 2000's.  However, as the technology sector faltered in recent years, the Debtor experienced financial difficulties.  These financial difficulties were exacerbated by the 9/11 tragedy, an unsuccessful effort to resolve his dispute with the Internal Revenue Service ("IRS") regarding assessments made for tax years 1996, and 1999-2004, and a very costly palimony lawsuit commenced against him by his former fiancé.

The Debtor's income levels have stabilized and, indeed, have grown since the Petition Date.  His increased earnings combined, which he has and will continue to accumulate will provide the basis for the Debtor to fund this Plan.  The Debtor does not own any real estate, or personal belongings of significant worth.  As disclosed on the Debtor's schedules, he is the grantor of the Armstrong Family Trust fka Brentwood Medical Trust dated April 16, 1997 (the "Family Trust"), which is a spendthrift, irrevocable trust.  The Family Trust owns certain household furnishings, and also holds shares in two non-publicly traded entities.  The shares in those entities likely do not have a recognizable value, as they are not currently available for trade on any public markets.  The household furnishings have a value of approximately $15,000.  The Debtor, his children and Mrs. H.R. Andrews are the beneficiaries under the Family Trust.  The Family Trust's trustees are Manuel P. Glaze and Southpac Trust International, Inc.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   The Debtor currently works as an independent consultant to

2   MyMedicalRecords.com, Inc. ("MMR"), NuWay Digital Systems, Inc and MMR AU, Inc as

3   well as other entities. The Debtor also serves on several Advisory Boards and Boards.

4   He is a party to three consulting agreements, the terms of which will renew or expire on

5   December 31 2007.  The Debtor currently earns approximately $42,000 to $48,000 per

6   month for his services.  In addition to cash consideration, the Debtor has received

7   300,000 stock options form MyMedicalRecords.com and 500,000 stock options from

8   NuWay Digital Systems, Inc for his post-petition services.  The Debtor's post-petition

9   earnings are not property of the bankruptcy estate as this case was commenced prior to

10  the enactment of the BAPCPA.  The Debtor has prepared a projected income and

11  expense statement covering the next 3 years following confirmation of the Plan

12  (hereinafter the "Projections").  The Projections are attached hereto as Exhibit 2.  The

13  Projections, prepared by the Debtor's personal certified public accountant, are based on

14  a number of assumptions, including most notably, that the Debtor will continue to work in

15  the same line of business as he is currently, and that the levels of his income will remain

16  consistent.  The Debtor believes that his assumptions are reasonable in this regard

17  based on his past history of success in the industry.

18                                   III.

19                 **THE DEBTOR'S RECENT FINANCIAL RESULTS**

20        For the year ending 2004, the Debtor had personal adjusted gross income of

21  $98,051.  For the year ending 2005, the Debtor had personal adjusted gross income of

22  $271,255.  For the year ending 2006, the Debtor had personal adjusted gross income of

23  $236,092.  Year to date in 2007 (ending February 28, 2007), the Debtor has earned

24  $118,422.70.

25                                   IV.

26                **FACTORS PRECIPITATING CHAPTER 11 FILING**

27        The Debtor commenced his case on October 15, 2005, on the eve of the effective

28  date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, largely

1  as a result of a denial of an offer in compromise he had made to the United States

2  Internal Revenue Service ("IRS") regarding disputed taxes for the tax years 1996, and

3  1999 through 2004.  Furthermore, he was facing a palimony suit from a former fiance

4  who was claiming more than $5,000,000 from the Debtor.[1]  A combination of the

5  collection efforts by the IRS, and the legal fees associated with the palimony suit, caused

6  the Debtor to elect to file a chapter 7 case.   After a few months of the case being in

7  Chapter 7, the Debtor was advised that he could propose to repay certain creditors from

8  future earnings in a chapter 11.  During the rush to file cases prior to the effective date of

9  BAPCPA, the Debtor did not understand all of his options under the Bankruptcy Code.  In

10  the face of accusations by his chapter 7 trustee's counsel that his wife was a criminal (a

11  claim that was conclusively shown (and admitted by the trustee) to be based on a

12  unfortunate case of mistaken identity by the chapter 7 trustee), and accusations that the

13  Debtor was evading responses to document requests (also untrue), the Debtor elected to

14  convert his case to chapter 11, rather than pursue a discharge of all of his obligations,

15  which would have likely left his creditors without any recovery.  He chose to make full

16  payment of his priority tax obligations to the IRS and California Franchise Tax Board

17  ("FTB"), full payment to all administrative creditors,  a partial payment to his general

18  unsecured creditors, and payment per agreement with two creditors who asserted non-

19  dischargeability actions against the Debtor.

20  **V.**

21  **CHAPTER 11 CASE**

22  **A. Commencement Of Case**

23  On October 15, 2005 (the "Petition Date"), the Debtor filed a voluntary chapter 11

24  petition with the United States Bankruptcy Court, Central District of California, Los

25

26  _____

27  [1] The Debtor's former fiance, Millette Fields, did not file a proof of claim in this case, despite having been served with a copy of the bar date notice, and despite having her claim listed as disputed.  Accordingly, Ms. Fields' claim is barred, and she will not receive any consideration under the Plan.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Angeles. As stated above, the Debtor's case was originally filed as a no-asset chapter 7

2    case. The Debtor later converted his case to one under Chapter 11 on March 13, 2006.

3    **B.  Motion to Set Bar Date for Filing Claims**

4    Following the commencement of its chapter 11 case, the Debtor filed a motion

5    requesting that the Court set a deadline (the "Bar Date") for the filing of proofs of claim

6    against the Debtor. An order of the Court approving this motion was entered on July 6,

7    2006. The Bar Date was September 6, 2006. Notice of the Bar Date was sent to all

8    Creditors of the Debtor.

9    **C.  Employment Of Professionals**

10    1.  General Bankruptcy Counsel:

11    SulmeyerKupetz ("SK"), a professional corporation, is serving as general

12    bankruptcy counsel to the Debtor. SK's employment was approved by an order dated

13    June 15, 2006. It is unclear whether approval of SK's employment was indeed required,

14    as SK is being compensated by assets that are not property of the Estate, i.e. the

15    Debtor's post-petition earnings. However, in an abundance of caution, SK sought and

16    obtained approval of its employment.

17    **D.  Non-Dischargeability Litigation**

18    Prior to the conversion of the case to Chapter 11, two creditors, Christy Corino

19    ("Corino"), and American Express ("Amex") filed non-dischargeability actions against the

20    Debtor pursuant to 11 U.S.C. §523. The Amex action was recently settled, and the

21    treatment of its claim, per the settlement agreement (the "Amex Stipulated Judgment"), is

22    set forth in the Plan and described in this Disclosure Statement. The Corino matter (the

23    "Corino Action") is still pending, and the parties agreed to go to mediation by June, 2007.

24    Prior to mediation, however, and solely to avoid the costs of continued litigation, the

25    Debtor reached an agreement with Corino regarding her treatment under this Plan which

26    will dispose of the Corino Action. The agreement with Corino is described herein, but will

27    also be subject to a stipulation for entry of judgment between the parties.

28    **E.  Preferential or Fraudulent Transfers**

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   Within ninety days prior to the Petition Date, the Debtor made numerous payments

2   to creditors.  The Debtor believes that these payments were generally made in the

3   ordinary course of the Debtor's business.  Further, please note that many (or all) of the

4   recipients of the payments may have other defenses to any cause of action that might be

5   asserted to the effect that any such payments constituted preferential transfers.

6   Moreover, in many instances, the pursuit of any claims for the recovery of such payments

7   as a preference may not be economically feasible due to the amount of payment at issue.

8   Additionally, the Debtor is not aware of any transfer by the Debtor that could be

9   construed as a fraudulent transfer.  In any event, in light of the payout to creditors under

10  the Plan, the Debtor does not believe that the investigation and/or pursuit of any

11  preference or fraudulent transfer causes of action would be warranted, even if there were

12  a substantive basis for pursuing any such action.

13  Under the Plan, on the Effective Date, any claims or causes of action to recover

14  preferences under Section 547 of the Code or fraudulent transfers under section 548 of

15  the Code are waived and released.  Accordingly, Unsecured Creditors with Allowed

16  Claims can be certain about what they are entitled to receive under the Plan without

17  concern whether any claims or causes of action under Sections 547 or 548 of the Code

18  might be asserted against them following the Effective Date.

19                              **VI.**

20                    **SUMMARY OF BUSINESS PLAN**

21  The Debtor's Plan involves payment (a) in full, on the Effective Date, of all

22  administrative claims (the "Administrative Claims"), which include claims of Debtor's

23  counsel, post-petition taxes, if any, and claims of the former chapter 7 trustee's counsel;

24  (b) payment in full, over time, of the priority claims of the IRS and FTB (the "Priority Tax

25  Claims"); (c) payment, on the Effective Date, of an amount equal to 10% of all Allowed

26  General Unsecured Claims; (d) payment of Amex's claim, per the Amex Stipulated

27  Judgment, at the rate of $1,000 per month for 28 months (Note: payments may have

28  commenced prior to confirmation of the Plan.  If so, payments made to Amex prior to

1  confirmation will be credited towards the Debtor's obligation); and (e) payment of

2  $120,000 to Corino on account of her $180,000 claim, in three equal installments over 24

3  months.

### A. Operating Projections

5  The operating projections for the Debtor for four year period following the

6  projected Effective Date of the Plan (July 1, 2007) reflect that the Plan is feasible.  The

7  projections show that the Debtor can pay his obligations under the Plan, and meet his

8  general living expenses following the Effective Date of the Plan.  Pursuant to the Plan,

9  the Debtor's obligations to General Unsecured Creditors will be fully satisfied on the

10  Effective Date.  Accordingly, the projections are irrelevant to the general unsecured

11  creditors.  The projections are only relevant to those creditors who will be provided with

12  payments over time.  This includes Amex, the IRS, and FTB, and Corino.  The

13  projections are attached as Exhibit 2 to this Disclosure Statement and are incorporated

14  herein by this reference.  The Debtor believes that the results reflected in the projections

15  are achievable with a high degree of likelihood.  The Projections were prepared by the

16  Debtor's personal certified public accountant, and take into account certain assumptions

17  regarding the Debtor's current level of income, and personal living expenses.

### B. Funds for Effective Date Distributions

19  The Debtor estimates that it will need approximately $193,356.41 for distributions

20  required to be made under the Plan on the Effective Date ("Effective Date Distributions").

21  The Effective Date Distributions included:

22      1.    Administrative Claims:    $ 31,356.41

23      2.    10% Payment to General Unsecured Creditors:    $162,000.00

24      3.    1st Payment to Corino:    $ 40,000.00

25      Total:    $233,356.41

26  The source of funds for the Effective Date Distributions are the Debtor's post-

27  petition earnings, which he has saved during the approximately 20 months since his

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  bankruptcy case was filed, as well as those funds he expects to earn from the time this

2  Disclosure Statement was filed until the Confirmation Hearing.

3  **VII.**

4  **SUMMARY OF THE PLAN OF REORGANIZATION**

5  **A.  What Creditors and Equity Interest Holders Will Receive Under The**

6  **Proposed Plan**

7      As required by the Bankruptcy Code, the Plan classifies Claims and Equity

8  Interests in various classes according to their right to priority. The Plan states whether

9  each Class of Claims or Equity Interests is Impaired or Unimpaired.  The Plan provides

10  the treatment each Class will receive.

11      **B.  Unclassified Claims**

12      Certain types of claims are not placed into voting classes.  Instead, they are

13  unclassified.  Such claims are not considered impaired and they do not vote on the Plan

14  because they are automatically entitled to specific treatment provided for them in the

15  Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following Claims in a Class.

16      1.  Administrative Claims in General:

17      Administrative Claims are claims for costs or expenses of administering the

18  Debtor's chapter 11 case (and prior to conversion, the Chapter 7 case) which are allowed

19  under Bankruptcy Code section 507(a)(1).  The Code requires that all Administrative

20  Claims be paid in full on the Effective Date of the Plan, unless a particular claimant

21  agrees to a different treatment.

22      The following chart lists all of the Debtor's anticipated section 507(a)(1)

23  Administrative Claims and their treatment under the Plan.  The amounts included in the

24  below chart are estimated as of the Effective Date, are in addition to any prepetition

25  retainers received by the respective professionals and, with respect to the professionals,

26  are all subject to Court approval.  Actual amounts owed could be substantially greater or

27  less than the estimated amounts:

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| NAME | Estimated Amount Owed | Treatment |
|---|---|---|
| SulmeyerKupetz, a professional corporation (Debtor's Bankruptcy Counsel) | $10,000 | Payment in full on the Effective Date. |
| Musick Peeler & Garrett (counsel to former Chapter 7 trustee) | 20,106.41 | Payment in full on the Effective Date. |
| Clerk's Office Fees | 500 | Payment in full on the Effective Date. |
| Office of the U.S. Trustee Fees | 750 | Payment in full on the Effective Date. |
| Estimated Total | 31,356.41 | |

2.    Court Approval of Fees Not Required:

As a general rule, the Court must approve all professional fees of those professionals hired at the expense of the Bankruptcy Estate. In this case, the Debtor proposes to pay its general counsel, and any other professionals he retained, without need of a fee application, as the source of those funds is the Bankruptcy Estate, but rather from the Debtor's personal, post-petition earnings. Following this procedure will obviate the need of a fee application, and the cost attendant thereto. The fees and expenses of Musick Peeler & Garrett ("MPG"), former counsel to the Chapter 7 Trustee, Alberta Stahl, are subject to approval by the Court. The Debtor understands that MPG has filed a final fee application in the case. The Debtor shall pay the Allowed fees and costs of MPG upon allowance by the Court.

As indicated elsewhere in this Disclosure Statement, the Debtor will have sufficient cash available on the Effective Date of the Plan to meet the Plan obligations on a timely basis.

3.    Priority Tax Claims:

Priority Tax Claims are certain unsecured income, employment and other taxes described in Section 507(a)(8) of the Bankruptcy Code. The Code requires that each holder of such a 507(a)(8) Tax Claim receive the present value of such Claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    such tax.  Under the Plan, all Allowed Tax Claims are to be paid in full on the Effective

2    Date.

3         The following chart lists all of the Debtor's Section 507(a)(8) priority Tax Claims

4    and their treatment under the Plan.   With respect to the IRS, the amounts listed are

5    taken directly from its proof of claim filed in the case.  With respect to the FTB, the

6    amounts are according to the Debtor's books and records.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| ● Name =         Internal Revenue Service<br><br>● Type of tax =      Income Tax for years 2002-2004 | $79,895.66 | ▪ Payment in full, within 6 years of the assessment date for the particular tax period.<br>▪ Payments shall be made quarterly, commencing with the first business day of the fourth quarter of 2007.<br>▪ Interest shall accrue and be paid at the Federal Rate of Post-Judgment Interest, defined as US Government Securities 1-year Treasury Constant Maturities. The interest rate shall be set as of the Effective Date, and shall remain constant throughout the repayment period.<br>▪ **Default**: If the Debtor fails to timely make any of the payments on federal taxes provided for in this Plan or if the Debtor fails to timely pay any of its post-confirmation taxes during the duration of this Plan, the IRS may declare that the Debtor is in default of its obligations to the IRS by written notice to the Debtor. Failure to declare that the Debtor is in default does not constitute a waiver by the IRS of its right to declare that the Debtor is in default. If the default is not cured within 10 days of the date the notice was mailed to the Debtor, then the IRS shall have the following rights without seeking and obtaining from the Court relief from the automatic stay provided for in 11 U.S.C. 362(a) or relief from the injunction provided for in 11 U.S.C. 524(a), which ever may be applicable, and without further order of the Court:<br><br>   1. The IRS shall have the right to declare immediately due and payable any interest or penalties which would have accrued on the pre-petition tax liabilities of the Debtor but for the filing of the |

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| | | bankruptcy petition, and if the Debtor fails to pay the interest and penalties, then they may be assessed by the IRS;<br><br>.     2.  If any federal tax lien was limited or in any way affected by the plan of reorganization, the federal tax lien shall be reinstated as they existed at the bankruptcy petition date;<br><br>3.  The pre-petition tax claims owed by the debtor shall be treated as taxes owed by a non-debtor as if no bankruptcy petition had been filed and as if no plan of reorganization had been confirmed; and<br><br>4.  The IRS shall have the right to proceed to collect directly from the Debtor all of the pre confirmation tax liabilities, including but not limited to any pre petition tax liabilities and any administrative tax liabilities, and related penalties and interest through the administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.  Such administrative procedures shall include, but not be limited to, the assessment of taxes, the filing of notices of federal tax liens, and the powers of levy, seizure, and sale under IR Code sections 6331 through 6344. |

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| ● Name =     Franchise Tax Board (State of California)<br><br>● Type of tax =     Income Tax for tax year 2004 | $4,980.16 | ▪ Payment in full, within 6 years of the assessment date for the particular tax period.<br>▪ Payments shall be made quarterly, commencing with the first business day of the fourth quarter of 2007.<br>▪ Interest shall accrue and be paid at the Federal Rate of Post-Judgment Interest, defined as US Government Securities 1-year Treasury Constant Maturities.  The interest rate shall be set as of the Effective Date, and shall remain constant throughout the repayment period. |
| **TOTAL** | **$84,875.72** | |

## C. Classified Claims and Interests

1.   Class of General Unsecured Claims (Class 1):  Holders of Allowed General Unsecured Claims, as set forth in Exhibit 3 hereto, will receive a distribution of 10% of their Allowed Claims in full satisfaction of their claims.  Distributions shall be sent by Debtor's counsel, within two weeks of the Effective Date.  Separately classified creditors will not receive the treatment described herein.

2.    Amex (Class 2):  According to the Stipulated Judgment entered into by and between Amex and the Debtor, in satisfaction of its claim of approximately $43,000, Amex shall receive payments of $1,000 per month for a period of 28 months. To the extent that payments have commenced prior to the Effective Date, all payments made will be credited against the Debtor's obligations to Amex.  To the extent there is any conflict between this Plan and the Stipulated Judgment, the Stipulated Judgment shall govern.  Amex shall be enjoined from taking any collection actions against the Debtor which are inconsistent with the Stipulated Judgment.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

3.    Corino (Class 3):  In full satisfaction of her claims, Corino will receive payments totalling $120,000, as follows: (a) $40,000 on the Effective Date; (b) $40,000 on the 1st anniversary of the Effective Date, and (c) $40,000 on the 2nd anniversary of the Effective Date.  If the Debtor defaults on his payment obligations, and fails to cure said default within 15 days of receipt of written notice of said default to Debtor and Debtor's counsel, then Corino will be entitled to a judgment in the full amount of her claim, plus interest at the Federal judgment Rate of Interest (the "Default Judgment").   The Default Judgment shall be entered by the Bankruptcy Court on application by Corino, and a sworn declaration attesting to the Debtor's default, and failure to timely cure upon receipt of notice of said default. The Default Judgment will be non-dischargeable in any future bankruptcy proceeding by the Debtor.   Corino shall be enjoined from taking any collection against the Debtor, provided that the Debtor remains in compliance with his payment obligations set forth herein.  The agreement of the parties will be set forth in detail in a stipulation for entry of judgment (the "Corino Agreement").  In the event of any discrepancy between the Corino Agreement and this Plan, the Corino Agreement will govern.

### D.  **Means of Effectuating the Plan**

1.  Funding the Plan:  The Plan shall be funded by the Debtor's post-petition personal earnings.  The funds for the Effective Date Distributions will have been placed in Debtor's counsel's firm trust account prior to the Confirmation Hearing.  On the Effective Date, Debtor's counsel shall disburse the Effective Date Distributions to those entitled to receive them.  The payments which are to be made overtime, including those by to the IRS, FTB, Amex, and Corino, will be made directly by the Debtor.  As set forth in the attached Projections, the Debtor projects that he will have sufficient income to make all of the payments called for under this Plan.

2.  Disbursements:  With respect to all Distributions called for herein the Debtor's shall act as the disbursement agent.    If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    of such payment or the performance of such act may be completed on the next

2    succeeding Business Day, but shall be deemed to have been completed as of the

3    required date.

4        3. Revesting of Property Estate: On the Confirmation Date, the Reorganized

5    Debtor shall be revested with all property that was formerly Property of the Estate

6    (including, without limitation, all claims and rights against third parties belonging to the

7    Debtor or the Estate) free and clear of all Liens, Claims and interests, except for

8    obligations arising under and specifically set forth in the Plan.

9        4. Post-Confirmation Operations: Following the Confirmation Date, the

10   Reorganized Debtor may operate and engage in its business free of any restrictions of

11   the Code, the Bankruptcy Rules, the Court, or the Office of the United States Trustee,

12   except if and as specifically set forth in the Plan.

13       5. Execution and Delivery of Documents: The Debtor and the Reorganized

14   Debtor are authorized to execute and deliver documents and instruments as are

15   necessary or appropriate to promote and implement Consummation of the Plan or to

16   carry out the purposes of the Plan.

17       6. Objections to Claims: Following the Confirmation Date, only the Debtor or

18   the Reorganized Debtor may object to the allowance of a Claim against the Debtor. Any

19   objection to a Claim shall be filed on or before ninety (90) days after the Effective Date.

20   This time period can be extended by the Court upon request of the Debtor or the

21   Reorganized Debtor.

22       7. Deadline for Filing Claims: The last day for filing proofs of claim against

23   the Debtor was September 6, 2006, the Bar Date fixed by the Court prior to Confirmation

24   of the Plan, except for Administrative Claims and certain Claims relating to rejected

25   leases and except as otherwise set forth in the Court's Bar Date order entered in the

26   Case on July 6, 2006.

27       8. Deadline for Filing Certain Administrative Claims: The deadline for filing

28   Administrative Claims asserted pursuant to section 503(b) of the Code, other than Claims

1  for compensation and reimbursement of expenses of professional persons employed

2  pursuant to Court order in the Case, shall be thirty (30) days following the Confirmation

3  Date.  If said date falls on a weekend or holiday, the deadline shall be the last Business

4  Day prior thereto.

5          9.  Retention and Enforcement of Claims:  Pursuant to section 1123(b)(3) of

6  the Code, the Reorganized Debtor may maintain and enforce any claims or rights against

7  third parties held by the Debtor or the Estate, except that any claims under Sections 547

8  or 548 of the Code shall be waived and released as of the Effective Date.

9          10. 1146(c) Exemption:  Pursuant to Section 1146(c) of the Code, any

10  transfers from the Debtor or the Reorganized Debtor to any other Person pursuant to the

11  Plan, or the issuance, transfer or exchange of a security under the Plan, or the execution,

12  delivery or recording of an instrument of transfer under the Plan, shall not be subject to

13  any law imposing a stamp tax, recording tax, transfer tax, or similar tax.

14          11. Court and United States Trustee Fees:  Prior to the Effective Date, all fees

15  due from the Debtor to the Clerk of the Court and all fees due from the Debtor to the

16  United States Trustee shall be paid in full.

17          12. Withholding and Reporting Requirements:  In connection with the Plan and

18  any instruments issued in connection therewith and/or with respect to Distributions

19  pursuant to the Plan, the Reorganized Debtor shall comply with all withholding and

20  reporting requirements imposed by any federal, state, local or foreign taxing authority.

21  Payment amounts set forth in the Plan are gross amounts which shall be subject to

22  withholding for federal, state and local taxes and usual and customary payroll deductions

23  (if applicable).

24          13. Executory Contracts and Unexpired Leases:  Executory contracts and

25  unexpired leases that are not otherwise assumed or rejected pursuant to a motion filed

26  with the Court prior to the Confirmation Date, shall be assumed as of the Confirmation

27  Date and the Cure Amount with respect to such executory contracts and unexpired

28  leases shall be paid by the Reorganized Debtor as soon as practicable following the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Effective Date.  The Debtor anticipates that there will be minimal, if any, Cure Amount(s)

2  due on the Effective Date.

3       **E.  Changes in Rates Subject to Regulatory Commission Approval**

4       This Debtor is not subject to governmental regulatory commission approval of its

5  rates.

6       **F.  Retention of Jurisdiction**

7       The Court will retain jurisdiction until Consummation of the Plan and the entry of a

8  final decree closing the Case.  The Court shall further retain jurisdiction under the Plan

9  for all purposes consistent with the Plan and the Code, which purposes include, but are

10  not limited to those set forth in Section XV of the Plan.

                                      **VIII.**

11

12                      **TAX CONSEQUENCES OF PLAN**

13       **A.  Introduction**

14       The implementation of the Plan may have federal, state and local tax

15  consequences to the Debtor and the Debtor's creditors and shareholders.  No tax opinion

16  has been sought or will be obtained with respect to any tax consequences of the Plan.

17  This Disclosure Statement does not constitute and is not intended to constitute either a

18  tax opinion or tax advice to any person, and the summary contained herein is provided

19  for informational purposes only.

20       The discussion below summarizes only certain of the federal income tax

21  consequences associated with the Plan's implementation.  This discussion does not

22  attempt to comment on all aspects of the federal income tax consequences associated

23  with the Plan, nor does it attempt to consider various facts or limitations applicable to any

24  particular creditor or shareholder which may modify or alter the consequences described

25  herein.  A creditor or shareholder may find that the tax consequences of the Plan to such

26  creditor or shareholder differ materially from the tax consequences discussed below

27  because of such creditor's or shareholder's facts and circumstances.  This discussion

28

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  does not address state, local or foreign tax consequences or the consequences of any

2  federal tax other than the federal income tax.

3      The following discussion is based upon the provisions of the Internal Revenue

4  Code of 1986, as amended (the "Internal Revenue Code"), the regulations promulgated

5  thereunder, existing judicial decisions and administrative rulings. In light of the rapidly-

6  changing nature of tax law, no assurance can be given that legislative, judicial or

7  administrative changes will not be forthcoming that would affect the accuracy of the

8  discussion below. Any such changes could be material and could be retroactive with

9  respect to the transactions entered into or completed prior to the enactment or

10  promulgation thereof. The tax consequences of certain aspects of the Plan are uncertain

11  due to the lack of applicable legal authority and may be subject to judicial or

12  administrative interpretations that differ from the discussion below.

13  **CREDITORS AND SHAREHOLDERS ARE ADVISED TO CONSULT WITH**

14  **THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM**

15  **AND TO DEBTOR OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN,**

16  **INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

17  **NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT WAS INTENDED OR**

18  **WRITTEN TO BE USED, CAN BE USED BY ANY TAXPAYER OR MAY BE RELIED**

19  **UPON OR USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING**

20  **PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER UNDER THE INTERNAL**

21  **REVENUE CODE OF 1986, AS AMENDED. ANY WRITTEN STATEMENT**

22  **CONTAINED IN THIS DISCLOSURE STATEMENT RELATING TO ANY FEDERAL**

23  **TAX TRANSACTION OR MATTER MAY NOT BE USED BY ANY PERSON TO**

24  **SUPPORT THE PROMOTION OR MARKETING OF OR TO RECOMMEND ANY**

25  **FEDERAL TAX TRANSACTION(S) OR MATTER(S).**

26      **B. Federal Income Tax Consequences to Debtor**

27          1. Reduction of Debtor's Indebtedness:

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    As a result of the Plan's implementation, a portion of the Debtor's aggregate

2  outstanding indebtedness will be treated for tax purposes as having been discharged.

3  (Any amount of potential discharged indebtedness for federal income tax purposes will be

4  referred to herein as a "Debt Discharge Amount.")  In general, the Internal Revenue Code

5  provides that a taxpayer who realizes a discharge of indebtedness must include the Debt

6  Discharge Amount in its gross income in the taxable year of discharge to the extent that

7  the Debt Discharge Amount exceeds any consideration given for such discharge.  No

8  income from the discharge of indebtedness is realized to the extent that payment of the

9  liability being discharged would have given rise to a deduction.

10    If a taxpayer is in a title 11 case (a case under the Bankruptcy Code) and the

11  discharge of indebtedness occurs pursuant to a plan approved by the court (such as the

12  Plan in this case, if confirmed), such discharge of indebtedness is specifically excluded

13  from gross income.  If the taxpayer is insolvent before a cancellation or deemed

14  cancellation of debt and does not become solvent by reason of the cancellation or

15  deemed cancellation, such cancellation or deemed cancellation of indebtedness is

16  specifically excluded from gross income.  In cases, such as the Debtor's, where both

17  bankruptcy (a case commenced under the Bankruptcy Code) and insolvency are present,

18  the tax rules applicable in the bankruptcy context trump and render inapplicable the

19  insolvency tax rules.

20    Accordingly, the Debtor will not be required to include in gross income any Debt

21  Discharge Amount as a result of the Plan.  The Internal Revenue Code requires certain

22  tax attributes of a Debtor to be reduced by the Debt Discharge Amount excluded from

23  gross income.  Tax attributes are reduced in the following order of priority: current year

24  net operating losses and net operating loss carryovers; general business credits;

25  minimum tax credits; capital loss carryovers; basis of property of the taxpayer; passive

26  activity loss or credit carryovers; and foreign tax credit carryovers.  Tax attributes are

27  generally reduced by one dollar for each dollar excluded from gross income, except that

28

1  general tax credits, minimum tax credits and foreign tax credits are reduced by 33.3 cents

2  for each dollar excluded from gross income.

3  **C. Tax Consequences to Creditors**

4      The tax consequences of the Plan's implementation to a creditor may depend on

5  many factors, including the type of consideration received by the creditor in exchange for

6  its Claim, whether the creditor reports income on the cash or accrual method, whether

7  the creditor receives consideration in more than one tax year of the creditor, and whether

8  all the consideration received by the creditor is deemed to be received by that creditor in

9  an integrated transaction.  The tax consequences upon the receipt of Cash, debt

10  instruments or other property allocable to interest are discussed below under "Receipt of

11  Interest."  Creditors are advised to seek their own tax counsel to properly assess the tax

12  consequences in their particular situation.

13      1.  Claims Satisfied With Payments:

14          a.  Gain/Loss on Exchange:

15      As a general rule, a creditor whose existing Claims are satisfied with payments

16  under the Plan will recognize gain or loss on the actual or constructive exchange of such

17  creditor's existing Creditor Claims (other than Claims for accrued interest) for the

18  consideration received equal to the difference between (i) the "amount realized" in

19  respect of such Claims, and (ii) the creditor's tax basis in such Claims.  The "amount

20  realized" will be equal to the sum of the Cash and (i) as to a cash-basis taxpayer, the fair

21  market value of all other consideration received, and (ii) as to an accrual-basis taxpayer,

22  the fair market value of the other consideration received, less any amounts allocable to

23  interest, unstated interest or original issue discount.

24      The general rule governing gain/loss and exchanges is qualified, with the actual

25  gain/loss realized affected by, among other things, the application of tax free treatment in

26  certain situations, including, without limitation, whether the exchange would otherwise

27  qualify as a reorganization, or as the exchange of a "security" under Internal Revenue

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Code Section 354.  Again, creditors are advised to seek their own tax counsel to properly

2  assess the tax consequences in their particular situation.

3                    b.  Tax Basis and Holding Period of Items Received:

4         Pursuant to Internal Revenue Code Section 1223, the aggregate tax basis in the

5  items received by a creditor will equal the amount realized in respect of such items (other

6  than amounts allocable to any accrued interest).  The holding period for items received in

7  the exchange will begin on the day following the exchange.

8                    c.  Determination of Character of Gain:

9         Under the general rule governing exchanges under the Internal Revenue Code, in

10  the case of a creditor whose existing Claims constitute capital assets in such creditor's

11  hands, the gain required to be recognized will be classified as a capital gain, except to

12  the extent of interest (including accrued market discount, if any), with any gain

13  recognized thereon generally treated as ordinary income to the extent of accrued market

14  discount.  In this regard, it should be noted that Internal Revenue Code section 582(c)

15  provides that the sale or exchange of a bond, debenture, note or certificate, or other

16  evidence of indebtedness by a bank or certain other financial institutions shall not be

17  considered the sale or exchange of a capital asset.  Accordingly, in this context, any gain

18  recognized by such creditors as a result of the Plan's implementation would presumably

19  be ordinary income, notwithstanding the nature of their Claims.  As a general rule, any

20  capital gain recognized by a creditor will be long-term capital gain with respect to those

21  Claims for which the creditor's holding period is more than one year, and short-term

22  capital gain with respect to such Claims for which the creditor's holding period is one year

23  or less.  Again, the actual characterization of gain/loss in this particular instance pursuant

24  to the general rules governing exchanges is qualified by, among other things, the

25  qualifications noted above with respect to realization of gain/loss and exchanges.

26  Creditors should be advised to seek their own tax counsel to properly assess the tax

27  consequences in their particular situation.

28                    2.  Receipt of Interest:

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    Income attributable to accrued but unpaid interest will be treated as ordinary

2    income, regardless of whether the creditor's existing Claims are capital assets in its

3    hands.  A creditor who, under its accounting method, was not previously required to

4    include in income accrued but unpaid interest attributable to existing claims, and who

5    exchanges its interest Claim for Cash or other property pursuant to the Plan, will be

6    treated as receiving ordinary interest income to the extent of any consideration so

7    received allocable to such interest, regardless of whether that creditor realizes an overall

8    gain or loss as a result of the exchange of its existing Claims.  A creditor who had

9    previously included in income accrued but unpaid interest attributable to its existing

10   claims will recognize a loss to the extent such accrued but unpaid interest is not satisfied

11   in full.  For purposes of the above discussion, "accrued" interest means interest which

12   was accrued while the underlying Claim was held by the creditor.  The extent to which

13   consideration distributable under the Plan is allocable to such interest is uncertain.

14         3.   Other Tax Considerations:

15               a.   Market Discount:

16    If a creditor has a lower tax basis in one of the Debtor's obligations than its face

17   amount, the difference may constitute market discount under Internal Revenue Code

18   section 1276.  (Certain obligations are excluded from the operation of this rule, such as

19   obligations with a fixed maturity date not exceeding one year from the date of issue,

20   installment obligations to which Internal Revenue Code section 453B applies and, in all

21   likelihood, demand instruments).

22    Holders in whose hands the Debtor's obligations are market discount bonds will be

23   required to treat as ordinary income any gain recognized upon the exchange of such

24   obligations to the extent of the market discount accrued during the holder's period of

25   ownership, unless the holder has elected to include such market discount in income as it

26   accrued.

27               b.   Withholding:

28

[MSH\BANKR\514019.1 4/16/2007]                          29

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  The Reorganized Debtor will withhold any amounts required by law from payments

2  made to creditors.  In addition, Creditors may be required to provide general tax

3  information to the Debtor in order to receive distributions pursuant to the Plan.

4  c.  Taxation of Certain Reserves:

5  Internal Revenue Code section 468B(g) provides that escrow accounts, settlement

6  funds or similar funds are subject to current taxation.  It also provides that the Internal

7  Revenue Service ("IRS") shall prescribe regulations for the taxation of any such account

8  or fund, whether as a grantor trust or otherwise.  The IRS issued final regulations

9  regarding settlement funds on December 18, 1992.  However, such regulations

10  specifically reserve the tax treatment of settlement funds in bankruptcy and the treatment

11  of stock of the issuer to satisfy such obligations.  It is thus uncertain as to who is

12  responsible for reporting income generated by the funds in any unclaimed property or

13  Disputed Claims Reserve formed pursuant to the Plan.  It is possible that the reserves

14  could be treated as a grantor trust for which the creditor/stockholder beneficiaries are

15  treated as grantors.  As such, the creditor beneficiaries would be subject to current

16  taxation on the income generated by such reserves.  If the reserves are not treated as

17  such a grantor trust, they will likely be treated as a partnership (under the default rule of

18  the "check the box" Treasury Regulations) or a trust taxable currently as a separate entity

19  on its income.  Pursuant to the Plan and related documents, any party responsible for

20  administering such reserves will also be required to file appropriate income tax returns

21  and pay any tax due out of such reserves as a result of any income earned in such

22  reserves.

23  THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX

24  CONSEQUENCE TO EACH CREDITOR.  FURTHERMORE, THE TAX

25  CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES,

26  UNCERTAIN.  THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS,

27  HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX

28  CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.

# IX.

## ALTERNATIVES TO CONFIRMATION OF THE PLAN

The Debtor believes that there are no viable alternatives to the Plan, and if the Debtor had not chosen to honor his obligations to his creditors, as set forth herein, there would be little or no recovery for the taxing authorities on account of their priority tax claims, and no recovery for general unsecured creditors.  The only alternative to this Plan is a conversion of the case back to Chapter 7, however, as set forth below, the Debtor believes that this would result in no net recovery to the estate, and unsecured creditors would receive dramatically less than what is provided under the Plan.  See the Debtor's liquidation analyses discussed in Section X(B). below.  Therefore, the Debtor believes that Confirmation of the Plan is the best alternative available for the Debtor and its Creditors.

# X.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES WITH CONCERNS REGARDING CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The Plan proponent (the Debtor) CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include (i) that the Plan must be proposed in good faith, (ii) acceptance of the Plan, (iii) whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and (iv) whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A. **Who May Vote or Object**

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]

31

1         1.  Who May Object to Confirmation of the Plan:

2        Any party in interest may object to the confirmation of the Plan, but as explained

3  below and as discussed in Section I(c) above, not everyone is entitled to vote to accept

4  or reject the Plan.

5        2.  Who May Vote to Accept/Reject the Plan:

6        A Creditor has the right to vote for or against the Plan if that Creditor has a Claim

7  which is (1) allowed or allowed for voting purposes, (2) included in an Impaired Class,

8  and (3) receives some distribution or otherwise retains rights under the Plan.  See

9  discussion in Section I(c) above.

10        a.  What is an Allowed Claim:

11        As noted above, a Creditor must first have an <u>allowed claim</u> to have the right to

12  vote.  Generally, a proof of claim will be allowed, unless a party brings a motion objecting

13  to the claim.  When an objection to a claim is filed, the creditor holding the claim  cannot

14  vote unless the Court, after notice and hearing, either overrules the objection or allows

15  the claim for voting purposes.

16        THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS

17  SEPTEMBER 6, 2006.  A creditor may have an Allowed Claim even if a proof of claim

18  was not timely filed.  A Claim is deemed allowed if (1) it is scheduled on the Debtor's

19  schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and

20  (2) no party in interest has objected to the Claim.

21        b.  What is an Impaired Claim or Impaired Equity Interest:

22        As noted above, an allowed claim only has the right to vote if it is in a class that is

23  <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or

24  contractual rights of the members of that class.  For example, a class comprised of

25  general unsecured claims is impaired if the Plan fails to pay the members of that class

26  100% of what they are owed on the Effective Date of the Plan.  Under the Plan, Classes

27  1 through 3 are Impaired and are entitled to vote to accept or reject the Plan.  Parties

28  who dispute the Debtor's characterization of their Claim as being impaired or unimpaired

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  may file an objection to the Plan contending that the Debtor has incorrectly characterized

2  the Class.

3       3.  Who is Not Entitled to Vote:

4       The following four types of claims and equity interests are <u>not</u> entitled to vote: (1)

5  claims and equity interests that have been disallowed; (2) claims and equity interests in

6  unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(2),

7  (a)(3), and (a)(8); and (4) claims and equity interests in classes that do not receive or

8  retain any consideration under the Plan.  Claims in an unimpaired class are not entitled to

9  vote because such a class is deemed to have accepted the Plan.  Claims entitled to

10  priority pursuant to Code sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote

11  because such claims are not placed in classes and they are required to receive certain

12  treatment specified by the Code.  Claims and Equity Interests in classes that do not

13  receive or retain any value under the Plan do not vote because such classes are deemed

14  to have rejected the Plan.  In the case of the Plan, no classes are deemed to have

15  rejected the Plan.  EVEN IF YOUR CLAIM OR INTEREST IS OF THE TYPE

16  DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE

17  CONFIRMATION OF THE PLAN.

18       4.  Who Can Vote in More Than One Class:

19       A creditor whose claim has been allowed in part as a secured claim and in part as

20  an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one

21  ballot for the secured part of the claim and another ballot for the unsecured claim.

22       5.  Votes Necessary to Confirm the Plan:

23       If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

24  impaired class has accepted the Plan without counting the votes of any insiders within

25  that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is

26  eligible to be confirmed by "cramdown" on non-accepting classes, as briefly discussed in

27  Section Paragraph 7 of this Section, below.

28

[MSH\BANKR\514019.1 4/16/2007]                    33

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1      6.  Votes Necessary for a Class to Accept the Plan:

2          A class of claims is considered to have accepted the Plan when more than one-

3      half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which

4      actually voted, voted in favor of the Plan.  A class of equity interests is considered to

5      have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of

6      such class which actually voted, voted to accept the Plan.

7          7.  Treatment of Nonaccepting Classes:

8          As noted above, even if all impaired classes do not accept the proposed Plan, the

9      Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the

10     manner required by the Code.  The process by which nonaccepting classes is forced to

11     be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code

12     allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it

13     meets all consensual requirements (requirements in Section 1129(a) of the Code) except

14     the voting requirements of Section 1129(a)(8), and if the Plan does not "discriminate

15     unfairly" and is "fair and equitable" toward each impaired class that has not voted to

16     accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

17         8.  Request for Confirmation Despite Nonacceptance by Impaired Class(es):

18         The Debtor will ask the Court to confirm the Plan by Cramdown on all Impaired

19     Classes if any of the Impaired Class does not vote to accept the Plan.

20     **B.  Liquidation Analysis**

21         1.  "Best Interest of Creditors Test":

22         Another confirmation requirement is the "Best Interest of Creditors Test", which

23     requires a liquidation analysis.  Under the Best Interest of Creditors Test, if a Creditor or

24     Equity Interest Holder is in an impaired class and that Creditor or Equity Interest Holder

25     does not vote to accept the Plan, then that Creditor or Equity Interest Holder must receive

26     or retain under the Plan property of a value not less than the amount that such holder

27     would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy

28     Code.

[MSH\BANKR\514019.1 4/16/2007]                    34

1  In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.

2  Secured creditors are paid first from the sales proceeds of the assets in which the

3  secured creditor has a security interest or lien.   Administrative claims are paid next.

4  Next, unsecured creditors are paid from any remaining sales proceeds, according to their

5  rights to priority.  Unsecured creditors with the same priority share in proportion to the

6  amount of their allowed claim in relationship to the amount of total allowed unsecured

7  claims.  Finally, equity interest holders receive the balance that remains after all creditors

8  are paid in full, if any.

9  For the Court to be able to confirm the Plan, the Court must find that all Creditors

10  and Equity Holders who do not accept the Plan will receive at least as much under the

11  Plan as they would receive under a chapter 7 liquidation.  The Debtor maintains that this

12  requirement is met here since General Unsecured Creditors shall receive substantially

13  more under the Plan than they would in a liquidation.

14  2.  Debtor's Liquidation Analyses:

15  The liquidation analyses have been prepared by the Debtor and have not been

16  audited by an independent public accountant.  No opinion, or any other form of

17  assurance is being, or has been, expressed in connection with the liquidation analyses.

18  Underlying the liquidation analyses are estimates and assumptions that, although

19  developed and considered reasonable by management of the Debtor, are inherently

20  subject to significant economic and competitive uncertainties and contingencies beyond

21  the control of management, and are based upon assumptions with respect to liquidation

22  decisions which could be subject to change.  Accordingly, there can be no assurance that

23  the values and costs reflected in the liquidation analyses would be realized if the Debtor

24  was, in fact, to undergo a liquidation.

25

26

27  **ASSETS VALUE AT LIQUIDATION VALUES:**

28  CURRENT ASSETS (DOES NOT INCLUDE POST-PETITION

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

EARNINGS OR ASSETS)
a.  Cash on hand                                             $1.200.00
b.  Security Deposit                                         $5,000.00
c.  Household Goods                                          $2,100.00
d.  Artwork                                                  $1,495.00
e.  Clothing, Jewelry                                        $4,350.00

TOTAL CURRENT ASSETS OF THE ESTATE                          $14,145.00

**Less:**
Chapter 7 trustee fees and expenses                         $20,000.00
**Less:**
Chapter 11 administrative expenses                          $11,356.41
**Less:**
Priority claims, excluding administrative expense claims    $85,000.00

(1) Balance for unsecured claims                            $    0

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
     OR RETAIN IN A CH. 7 LIQUIDATION:     =   0%**

% OF THEIR CLAIMS WHICH GENERAL UNSECURED CREDITORS WILL RECEIVE
     OR RETAIN UNDER THIS PLAN:          =   10%

Below is a demonstration, in tabular format, that all creditors and interest holders

will receive at least as much under the Plan as such creditor or holder would receive

under a Chapter 7 liquidation.

| CLAIMS & CLASSES[85] | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 10% |
| Priority Tax Claims | 100% | 0% |
| Class 1 – General Unsecured | 10% | 0% |
| Class 2 – Amex | 100% | 0% |
| Class 3 – Corino | 65% | 0%[2] |

[2] Corino will receive approximately 65% of her total claim under the Plan.   In a
liquidation scenario, she would likely attempt to obtain a non-dischargeable judgment,
and her ability to enforce such a judgment is uncertain.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Note the Liquidation Analysis assumes that a Chapter 7 Trustee would be

2  unsuccessful in recovering any assets of significant value for the Estate.  Prior to

3  conversion of the case, the Trustee had identified certain transfers that she had

4  questions about, and indicated that she may pursue avoidance of the same.  These

5  transfers included certain payments made by the Debtor to his spouse, Taylor Armstrong

6  f/k/a Taylor Ford.  These transfers amounts to approximately $42,000 the Debtor gave to

7  his wife for various reasons, including to pay for household and wedding expenses.  Even

8  if these amounts were recovered by a chapter 7 trustee, they would not be sufficient to

9  cover the priority tax claims, let alone make a distribution to the general unsecured

10  creditors.  Furthermore, the only other possible assets in the case is the Debtor's interest

11  in the Armstrong Family Trust, which owns certain household furnishings, and minority

12  shareholder interests in two privately held companies, which currently have no market

13  value, as they are not freely tradeable, and there is no market for the shares.

14  **C. Feasibility**

15  Another requirement for Confirmation involves the feasibility of the Plan, which

16  means that Confirmation of the Plan is not likely to be followed by the liquidation, or the

17  need for further financial reorganization, of the Debtor or any successor to the Debtor

18  under the Plan, unless such liquidation or reorganization is proposed in the Plan.  There

19  are at least two important aspects of a feasibility analysis.  The first aspect considers

20  whether the Debtor will have enough cash or credit available on the Effective Date

21  (projected as July 1, 2007) of the Plan to pay all the claims and expenses which are

22  entitled to be paid on such date.  As described above, the Debtor will have deposited the

23  funds necessary to make the Effective Date Distributions into the Debtor's attorneys' trust

24  account prior to the Confirmation Hearing.

25  The second aspect of feasibility considers whether the Debtor will have enough

26  funds or credit available over the life of the Plan to make the required Plan payments.

27  The Debtor has provided financial information and statements which include both

28  historical financial information and projected financial information (see Exhibit 2 hereto).

1  Please refer to the relevant financial statements. YOU ARE ADVISED TO CONSULT

2  WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY

3  QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS, PROJECTIONS,

4  AND RELATED INFORMATION.

5

6                                    XI.

7                    **EFFECT OF CONFIRMATION OF PLAN**

8        **A. Discharge of Debts**

9        Pursuant to section 1141(d)(1) of the Code, Confirmation of the Plan will discharge

10  the Debtor from any Debt that arose prior to the Confirmation Date, and any Debt of any

11  kind specified in section 502(g), 502(h), or 502(i) of the Code, whether or not: (1) a proof

12  of Claim based on such Debt is filed or deemed filed under section 501 of the Code; (2)

13  such Claim is allowed under section 502 of the Code; or (3) the holder of such Claim

14  accepts the Plan.  Pursuant to section 524(a)(1) of the Code, the Debtor's discharge

15  pursuant to Confirmation of the Plan under section 1141 of the Code, voids any

16  judgments at any time obtained, to the extent that such judgment is a determination of

17  the personal liability of the Debtor with respect to any Debt discharged, whether or not

18  discharge of such Debt is waived.  Pursuant to section 524 of the Code, the Debtor's

19  discharge pursuant to the Plan under section 1141 of the Code operates as an injunction

20  against the commencement or a continuation of an action, the employment of process, or

21  an act, to collect, recover, or offset any discharged Debt as a personal liability of the

22  Debtor, whether or not discharge of such Debt is waived.  The Plan does not discharge

23  the Debtor from any debts that are non-dischargeable pursuant to section 523 of the

24  Code, however, holders of non-dischargeable claims addressed in this Plan will be

25  enjoined from pursuing any collection of such claims, provided that the Debtor remains in

26  compliance with the payment obligations set forth hereunder.  With respect to the

27  Debtor's child support obligations, no injunction or discharge will apply.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

[MSH\BANKR\514019.1 4/16/2007]                    38

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**B. Modification of Plan**

The Plan may be modified upon motion of the Debtor or the Reorganized Debtor, or corrected by the Debtor or the Reorganized Debtor prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to section 1125 of the Code provided that, after notice to the United States Trustee, and all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors. At any time prior to Consummation, the Debtor or the Reorganized Debtor may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

**C. Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Debtor shall file a status report with the Court explaining what progress has been made toward Consummation of the Plan. The status report shall be served on the United States trustee, and those parties who have requested special notice. Further status reports shall be filed every 120 days until the Case is closed and served on the same entities, unless otherwise ordered by the Court.

**D. Final Decree**

Upon Substantial Consummation of the Plan or as soon thereafter as all matters in the Case have been resolved, the Reorganized Debtor will file a motion with the Clerk of the Court requesting the entry of a final decree closing the Case.

**XII.**

**CONCLUSION**

The Debtor urges all Unsecured Creditors to vote in favor of the Plan and to return your Ballots so that they will be received at the address and pursuant to the procedures

described in this Disclosure Statement, no later than _____, 2007

Respectfully submitted,

Date: _____

RUSSELL ARMSTRONG,
Debtor and Debtor in Possession

PRESENTED BY:

**Sulmeyer**Kupetz
A Professional Corporation

By: _____

Mark S. Horoupian
Bankruptcy Counsel for
Debtor and Debtor in Possession